Our next case is Receivership Estate of Audioscience Inc. v. Google LLC. Mr. Petillo, you have reserved four minutes of time for rebuttal. Yes, Your Honor. May it please the Court, Mike Petillo for Appellant AudienceScience. The claims in this case are patent-eligible because they provide a specific solution to an Internet-centric problem. They recite a method that improves technology for presenting advertisements on the Internet using technology that only exists in the realm of computers. Where is the specificity? Can you show us? Yes, Your Honor. I think the claim is really nothing but specificity. It's an integrated process that improves on the prior art in several ways. The first part goes to how to identify a set of ads that are relevant to a user. The second part involves how to choose from among those ads which one to select. And it does so in a very specific way. It starts by taking when the system receives a request for a user to visit a page on the publisher's website, it adds that to a page history that the user has already accumulated with the publisher, and beforehand, all of the pages on the publisher's website and all of the ads that could potentially be displayed have been assigned keywords that relate to the topic of the page and the topic of the advertisements. So once this comes in and once you get that request, it adds that page that takes into account the keywords that are identified for the current context of what the user is looking at. It combines those with keywords relating to all of the sites that the user has been visiting. And in that way, you capture both what is on the user's mind at that time and also account for historically what have they been looking at that's been interesting them. And then you assign maybe some numbers to particular ads according to in some undefined metric a particular ad has been affected for some reason. Well, yeah, after you have collected the ads, then the next step is that to each of those identified ad messages, you attribute a selection weighting reflecting the advertisement's relevant performance. And that score reflects the extent to which the advertising message has generated revenue in the past. So you have weighting values, and then you use those weighting values to select one of those advertisements probabilistically based on the relative weighting that has been given. Is there any specificity in the claims about that last step, the performance rating of the ads? And if so, where do I see that specificity in the claims? The specificity is the selection weighting is based on its relative performance to the extent to which the advertising message has generated revenue. And so it's a very specific metric that it says we're looking at. Let me ask you this. You rely heavily on, I think it's Weisner, correct? Yes. I'm sure you know some of those claims were found to survive the motion at issue there, but some were not. And I think the court pointed out the ones that didn't were the ones that were not specific enough, at least in part. Why don't your claims fall into that ladder bucket, the not specific enough? Well, I mean, if we're talking about the performance score specifically, is that the issue? That would be one of them. I think the argument we're going to hear is that all three of the things you said were the claims were specific enough. So the fact is you have defined a very specific category. It's performance based on revenue. And the specification tells you various ways that you can define it, various different ways that you can do it. And the fact that there's a little bit of some play and some flexibility in what you can select is not fatal. If you look at the McGrow case, that case was improving computer animation based on a set of rules. And those rules were defined in terms of morph weight sets as a function of, I believe it was pace of speech and maybe one other factor. And the other side argued, well, that's abstract because you've just defined a category of rules. And it's up to the user to decide, to identify those rules themselves. And the court said no. They defined the genus with sufficient specificity that limits it to a specific category. It doesn't preempt the use of every other potential field that could be out there. And once you've sufficiently defined the genus, then you may have other questions on 112 that relate to those. But that is specific enough to render it non-abstract. And that's the exact same thing here. The fact that the claim very specifically defines a performance score based on the extent to which it's generated revenue in the past, the fact that it gives you a couple different ways that you might choose to define it doesn't mean it's non-abstract. I mean, there's a little bit of flexibility does not render it non-abstract. Right, but you would agree that under the basic concepts at issue here, a judgment call is necessary as to whether there is enough specificity. I think there's always a judgment call as to whether there's enough specificity. I guess that would maybe be the point. Between a principal and a concrete application, you will always have a need to distinguish a degree of specificity in the concrete application because words are being used and words have some category built into them. Why is this not on what for you would be the wrong side of the line because just focusing on the performance score, there really isn't anything significantly more than what's inherent in what any advertiser is looking for. How much bang do I or how much buck do I get for this? Well, I think there are a couple answers to that. One, I think what's important to recognize is it's not just assigning a performance score. It's what you do with the performance score that makes this more inventive. I mean, there may have been analogs in the past when people were trying to evaluate how something did. I don't think that they had the same tools, the same specificity, but the question is what do you do with that and what that does is it finds— What does the claim say? The claim says you have performance score and then you select according to the weighting, which is just the performance score. What does that add to what you're doing with it? Well, selection— Presumably you—this doesn't even say select the ones that are better performing. So it says selecting in accordance with the selection weightings. And what that means is if you look at the spec, every time the spec discusses what that means to select in accordance with the selection weightings, it says that that's a random and probabilistic way of selecting. And that's not, in fact, in the claims, right? I believe that is in the claims. I think—well, the specification, every time it refers to selection in accordance with weighting, it refers to it as randomly selecting. But also, it's a concept in statistics. If you just were to Google selection based on weights, you'll see that the concept there, any time you're selecting based on weights and statistics, it's probabilistic and it's random. Now, there was no claim construction on this issue, so I don't—you know, there's no basis to say that that excludes it. But I think that if we had to go back and construe this, does this claim encompass it or not, there's a very good basis to believe skilled artisans would understand that selection in accordance with weighting means random selection. But the point is— What do you mean by random selection? It means that it selects it in accordance with its probability. If you have, you know, one that's been weighted 70, one that's been weighted 30, you might get either, but one has a 70% chance of being selected, the other has a 30% chance of being selected. So it means—and that's exactly the whole point, the inventive concept here is that by allowing different ads to be scored, not just going with the top score every time, which you can easily see, there might be a reason to do that. Someone might think that's the best approach. But by allowing a variety of different ads to be scored through this—or to be viewed by the user through this probabilistic weighting, it allows other ads a chance to be seen, which allows—and as the specification says, what that allows to do by showing you different ads, it allows the system to take new feedback into account and to adapt going forward and adapt to trends in user interest. Yeah, if I were to agree with the district court that at Step 1 your claims are directed to an abstract idea, what more have you said or added at Step 2 that should have allowed you to survive this Rule 12 motion anyway? Sure, so the question is, if you, you know, if you find you're directed to an abstract idea at Step 1, what do you add at Step 2? Is there an inventive concept that amounts to significantly more than—  Right. What do you have here? Yeah, what we have is we have the significantly more that makes us just a patent—than just a patent-eligible application. It's not just saying do targeted advertising because these principles could not be employed outside of computers. But it's not even just saying perform targeted advertising on a computer. It's doing it in a specific way. And if you look at the—the patent itself tells us that one of the advances comes to selecting in terms of how you select the ads that are relevant to the user. And it said in the prior arc there were two ways of doing this. There was a page context approach that presented you with an advertisement that related to the same subject of the page that you were on. And there was an approach based on user history—user browser history. And that approach would say, okay, you've come to our site a number of times— I think, yeah, I think we understand that. Let me just ask you because we're getting low on time, I know. If you were given a chance to file an amended complaint, how would it look different than the current complaint? Well, honestly, what we would ask is we would believe—it would depend on your opinion because below— below we didn't think there was ever any evidence put forward of what—of the conventionality of these claim steps, of whether they're generic, whether something is conventional under this court's laws of question of fact. And even though we're in 101, you know, burdens of proof still apply. And so what did Google point to below that said that these steps were just routine, conventional practice? So what I'm hearing is an amended complaint would have some factual allegations that your claims, whatever they are, were not conventional, well understood, and routine. Is that correct? That's correct. To the extent—I mean, we believe there is plenty of proof here in the patent because the patent itself explains that its method of selecting relevant advertisements is an improvement over the prior art. It's a specific inventive concept. It may seem simple to us now, but, I mean, this was 2004, and these were new concepts at the time, and it didn't just combine two preexisting concepts. Did you seek or did either side seek claim construction? That was accomplished already. Is that right? There were claim constructions? There were claim constructions. So we don't have any dispute here about either a claim construction or we didn't get an opportunity to get a claim construction that would change the 101 analysis. Well, we wouldn't have needed a claim construction on this issue of whether or not the claim recites random selection because the district court never found that it didn't. The district court found three categories of claims were representative, but all that didn't— And you don't dispute that here? We don't dispute that, but the issue is what did it find? We think that those distinctions are irrelevant for purposes of 101 because the court didn't say that the distinctions turn on how the selection is performed in accordance with weighting. The distinctions turned on what was weighted. Some claims, you know, claim one says you weight the advertisements. Another claim said you weight keywords. Another one said you weight—it's escaping me, but there were three different things that could be weighted. But there was never any dispute that claim one wasn't representative of all the other claims in terms of random selection, and so we would have had no need to seek a claim construction below because that issue just wasn't—it just wasn't disputed. Okay. We thank you for your arguments. We'll restore your rebuttal time. All right. Thank you.  Counselor Kember. Good morning, Your Honors, and may it please the Court. The district court got it right here, and the analysis was far from a caricature. It made findings about what claims were representative, which audience science has not challenged for this court, and the district court then found that these claims were—that those representative claims were abstract and lacking in an inventive concept. It did so based on similar cases and similar claims that were found ineligible by this court in the past. Now, the abstract idea here is—the abstract idea here is targeting advertisements to Internet users to maximize revenue generation. And the specification is very clear here. Well, this case is more than just about targeted advertising, and I think the argument is that the performance score, that whole evaluation process, is an inventive concept that saves the patent at claim two—I mean, step two. Can you address that? Sure, Your Honor. Sure. So in terms of the step two inquiry, and I agree that the inventive concept question or the performance score is really a step two question here. It's not really, I think, a part of the step one inquiry. But as to that, there is no specificity as to how these performance scores are being calculated. The specification goes so far as to say that the performance scores can be a function of a performance score, or they can be their own performance score. There's nothing in the claim itself that specifies how to do it. The claim is just generic. It says map generally ads or subjects or keywords, and then score them or weight them in some generic, generalized way. It says, of course, score them by indicating an extent to which they've generated revenue, and then the next step, of course, goes on to say selection weightings, which at least your friend on the other side says would be understood by one of ordinary skill in the art to at least call up random and probabilistic concepts. Out of Rule 12 motion, what tells us that all of that is wrong? The specification itself and the fact that they never pleaded, nor could they plead, that the performance weighting was an inventive concept. Why couldn't they plead? I grant you they did not plead it. Why could they not plead that? The performance score, if you look at the specification appendix, I think it's 31 and 32, there's discussion in column 3 and column 6 of the performance score. It's a very generalized discussion. It just says you can call up a performance score based on any number of things that were standard in the industry at the time, things like the performance of the ad, the click-through rate, the conversions. These are all standard things. They are not things that they purport to have even invented. There's nothing in the specification that suggests that those were new ways of weighting ads that they came up with. What about the ordered combination of using information about a user, information about an ad, and the performance score? What would prevent them from alleging that that ordered combination was not well understood, conventional, or routine in 2004? In terms of what would prevent them, I mean, I don't know what would prevent them. What I know is that they were not willing to do that. They were not willing to put forward a proposed amended complaint or argue those things. Where can I see in the record their unwillingness? The fact that they never did it, Your Honor. I don't think that's enough. Under Ninth Circuit law, they weren't required to do that at a Rule 12 motion, were they? They were not required to, but it is standard practice typically to, as we see in the Atrix case, to submit a proposed amended complaint sometimes in response to a 12b6 motion. I'm just not sure how I can infer an unwillingness to do it. Is that your best argument for why I shouldn't give them a chance on remand to do it? No, Your Honor. There is one other point on this, and let me find where it is that they say it. Even on appeal, the other side says they didn't plead it because, quote, the patents themselves prove the point about alleged inventiveness. So I think in light of that statement, Your Honor, the court can look at just the patents themselves in terms of what is alleged to be invented. The patent itself, I think, in part says we have overcome the problems with targeted Internet advertising, and the district court recognized that but said I'm not taking that as true. Isn't all of that, in fact, what happened, and isn't that error on a Rule 12 motion? So with respect to that combination and that purported improvement over the prior art, what the specification is clearly talking about is the combination of using context and user history. There's nothing about the combination that they're talking about there that relates to the performance score. So in the specification, there's nothing that sort of suggests that that performance score was an improvement over the prior art. I'll take that as true for now, but even so, the specification does make a representation about overcoming a problem, and I think their argument for why they didn't try to amend is they assumed that at Rule 12, the district court was obligated to take that statement in its own patent as true, and they were surprised, evidently, that the district court didn't. So I'm mostly concerned with your answer to isn't that error? Isn't that what the district court did and isn't that error? But anything else you want to say about that would be helpful. So in terms of it not being error, again, Your Honor, I would point to the Chargepoint case as well as the Atrix case as to why it was not error to allow them to amend. In Chargepoint, the court said that that kind of position or that kind of argument would be waived. Now, given in Chargepoint, it was applying Fourth Circuit law. It was not applying Ninth Circuit law. That may be a big difference, right? It may be, but I don't believe so in this case, and that's not part of the briefing. It's certainly not part of their argument that that's a distinction here. So I think that's why it's not error. And Atrix, in that situation, that was also on point. The patentee sought to amend in response to the motion. That's common, again. That's not what audience science did here. It did not add a draft amended complaint, and the court thought that it would be futile. And, again, they admit now in their briefing that the issue of the inventiveness is fully teed up, is squarely presented in the patent itself. So there's nothing that they're saying they could have or would have added by way of an amended complaint that adds to what is disclosed in the patent itself. Can I just ask you, are you making the argument that, and I'll summarize it this way, conventionality is just not the issue here because the only things that they point to for trying to save the claim on Step 2 are all themselves abstract. An unconventional abstract idea still doesn't save a claim from invalidity at House Step 2. And what you have here is sort of a combination of three abstract ideas all kind of related. See what this user is looking at now. See what that user has looked at before and choose the ads to serve that person that in some very general way have been more effective. Yes, Your Honor. That is what we're arguing. I think there are two ways to argue it or to look at it. There is that way to say let's look at all these three things. They're all sort of abstract at Step 1. I think the other way to look at it is to say the patent seems to recognize the two conventional techniques, context and user-based targeting. What it purports to do is put those two things together. That's just combining two abstract ideas, which the court has said in a number of cases, for Cognacorp I think being one of them, that combining two abstract ideas is just another abstract idea. I think then you could go and look is there a saving inventive concept and look at the question of the performance weighting and think is this enough? I think you took the words out of my mouth before. Is that significantly more, which is what the case law requires, is that significantly more to do this performance weighting or this weighting that they have claimed in Claim 1, the representative claim that they're arguing? The answer is no. The way that that is claimed is whether you want to call that additionally abstract or whether you want to call that not adding on an inventive concept at Step 2, the claims still fail either way that you kind of look at the problem. Do you want to take one quick shot at distinguishing, was it Weissman or whatever? Weissner.  Not distinguishing it from the parts that were upheld, right? Well, understood. I think it was Judge Stark that asked about Weissner and noted that Weissner has two patents that were found ineligible and two patents that were found at least to have been pleaded with sufficient particularity to get past 12b6. We do think this is a lot closer to the two that were found ineligible. The idea of a digital travel log is not actually unlike what we have here, which is the idea of a log of the websites that one has visited and targeting ads to those things. The two that survived in Weissner, if you look at that Weissner opinion, it was focused on the fact that there were sufficient pleadings in the second amended complaint with respect to an inventive concept. And again, going back to our conversation a few minutes ago, that is not here. There is nothing in the complaint. And I don't think there's any dispute between and among the parties that there is nothing in the complaint. So the question is, is there anything at that point in the patent itself, the specification? And again, we submit, Your Honors, that there is nothing to distinguish or to show an inventive concept. Not even the patent specification suggests that the performance weightings are some kind of new or inventive step. And again, they're just referring to commonly known techniques that were used in the industry. So the big distinction for Weissner, we think, is that there was something pleaded there that is not pleaded here, and frankly, that could not be pleaded here. And that is the distinction over the Weissner case. Can I ask you, I think you do have a notion of our personal web case that, if I understand you correctly, goes like, at step two, a fact dispute can only be revealed or created based on the intrinsic patent evidence itself. And if a complaint tries to add factual allegations to create a fact dispute that aren't actually in the patent or maybe the prosecution history, then we've said it doesn't count towards a fact dispute at step two, at least at Rule 12. I'm not sure I see that in personal web. Is that your argument? If that's what you think the law is, is it personal web or is it somewhere else that I would see that? I think it may be in personal web. I think the issue is perhaps a little more squarely addressed, I think, in the broadband ITV case, where there's discussion, I think, in the context of both step one and step two, as to how you use the specification in order to determine whether or not there was an inventive concept or, I think, at step one, a more technological solution. And that there is looking at the actual specification. I think it even cites Wiesner, actually, in that situation. So I think Wiesner would be another case that is instructive on this in addition, perhaps, to personal web. Those tell you that you look at the specification in order to figure out what the specification itself is saying is inventive. If I thought that the law was at Rule 12, if there's not a clear contradiction between the intrinsic patent evidence and the allegations and the complaint, then the patentee is probably going to be fine, at least get past Rule 12. If I thought that was the law, why would I be wrong? I don't think you would be wrong in that situation, Your Honor. Okay, so then where's the clear contradiction here? Just give us one example of a clear contradiction between their contention that they have an inventive concept here and something in any of these patents. Well, I understood your question before, Your Honor, to be about a contradiction between the complaint and the specification. There is nothing alleged in the complaint, so there is no contradiction. I'm thinking of a future complaint, if they were given a chance to file one, where they say something to the effect of the order combination of these two search techniques plus performance scores was unconventional, nonroutine, not well understood in 2004. Is there something in the patent, you can point me to, that actually contradicts an allegation like that so that I would know it's futile for them to even try? I don't know that there's a contradiction, per se, Your Honor. I think if you look at the way that the performance scores are discussed, it's quite clear that they're talking about things that are known in the industry that are not sort of new, and there are multiple different ways that are discussed in that specification. So I think that's the answer to your question, Your Honor. You're well over your time. Sorry, Your Honor. Thank you very much. So let's hear back from Attorney Patil. Thank you. So I think what we just heard from my friend I can only describe as a complete inversion of the burden of proof. The question, what was presented was, I don't see where the specification says this is inventive. I don't see where they pled this is inventive. I don't see how they could plead that it was inventive. They are the ones, Google is the one trying to invalidate this patent, and in our system the party that is seeking to invalidate the patent bears the burden of proof on a fat question of conventionality. What I didn't hear him say is anywhere that they have actually proved, come forward with evidence, that this performance score had been done by anyone ever in the way that it's recited in the patents. And I think it would be a radical change in this court's law to suddenly say that no patent can survive 101 on conventionality unless the patent actually goes through and says this is inventive over the prior art, this is inventive over the prior art, this is inventive over the prior art. I don't believe that's required by 112 or anything else in terms of what you're required to put into your patents. The party that's seeking to invalidate the patent bears the burden of proof. And again, to that end, it did specifically say, the patent did specifically say, that its methods of selecting relevant advertisements was in advance over the prior art. That does specifically say it was an inventive concept. Now did the performance score also say that? No, it did not. But does that mean that if there's any evidence that this has ever been used? There's certainly so much to say that it was not just obvious but conventional. And I think the answer is there is no proof there. The question is not what could we plead around that necessarily. The question is what did they come forward with to show otherwise as the party with the burden of proof. And I think the answer is nothing. If you look at the district court's opinion, if you look at the briefing below, if you look at the briefing in this court, there's not a lick of evidence to support that, much less clear and convincing evidence. I'd like to really quickly turn to the notion that this is just combining existing abstract concepts. And respectfully, I don't believe that's a fair characterization of the claim. If you were to say targeted advertising based on page context is an abstract concept, if you were to say targeted advertising based on your browsing history is an abstract concept, I don't know that I would necessarily fight that given this court's case law. But the question is does our invention provide an inventive concept that amounts to significantly more than that? And it does because it recites a specific method using keywords to achieve that function. It may seem simple. It may seem straightforward, the idea that you would just tag and map. But it was an inventive concept at the time. The patents say so. And I think that if we're trying to draw the line, I think where we can draw the line is with cases like Chewy. And Chewy said it was going to track users' history and it was going to provide targeted advertising based on an information repository. And the problem was the invention repository was nothing but a black box. As this court said, it didn't actually tell you what to do. It didn't tell you how to match the user's history with the ads to present. And what we have here is the exact specificity to provide how to do that. We don't just say a black box, use browser history, use the page you're on. We tell you a specific method for doing so. And we believe that's pretty much the answer that distinguishes us from all of these cases where targeted advertising has been struck down is the method was a black box and we've provided you the specificity. If there's nothing else, I would respectfully request that the court reverse the district court's decision. Thank you. Thank you.